**J & M CORPORATION, John Lazzeroni, and Melinda K. Carevich, Plaintiffs–Appellants,**

v.

**HARLEY–DAVIDSON, INC., Defendant–Cross Appellant,**

and

**Radio Sound, Inc., Defendant–Cross Appellant.**

**Nos. 00–1295–00–1297.**

United States Court of Appeals, Federal Circuit.

Nov. 2, 2001.

Stephen T. Sullivan, Sullivan Law Group, of Phoenix, AZ, argued for plaintiffs-appellants. With him on the brief was Tish L. Berard.

Katherine W. Schill, Michael Best & Friedrich LLP, of Milwaukee, WI, argued for defendants-cross appellants. With her on the brief was Michael E. Husmann. Of counsel on the brief was J. Ralph King, King and Schickli, PLLC, of Lexington, KY.

Before GAJARSA, Circuit Judge, ARCHER, Senior Circuit Judge, and LINN, Circuit Judge.

ARCHER, Senior Circuit Judge.

J & M Corporation, John Lazzeroni, and Melinda K. Carevich ("J & M") appeal from the summary judgment of the United States District Court for the District of Arizona. The district court held that U.S. Reissue Patent Number 34,525 is not infringed by the motorcycle helmet accessories manufactured and distributed by Harley–Davidson, Inc. and Radio Sound, Inc. ("Harley–Davidson"). *J & M Corp. v. Harley–Davidson, Inc.*, No. CIV 97–2353–PHX–RCB (D.Ariz. Feb. 10, 2000) ("*J & M II* "). Harley–Davidson cross-appeals the court's conclusion that J & M was not estopped from asserting infringement under the doctrine of equivalents. Because the court correctly concluded that the accused accessories do not infringe literally or under the doctrine of equivalents, we affirm.

## BACKGROUND

J & M is the exclusive licensee of Reissue Patent Number 34,525 ("the '525 patent") directed to helmet accessories for mounting a microphone and an electrical plug on a motorcycle helmet. The microphone and electrical plug form part of an audio system that allows motorcyclists to communicate with companions while riding. J & M's patented accessories have two components, a microphone mount and a plug mount. The microphone mount secures a microphone boom that may be positioned near a motorcyclist's mouth.

The plug mount secures an electrical plug that receives wires from the microphone mount and from earphones mounted in the helmet interior. The electrical plug also mates with a second electrical plug that receives wires leading to electronic audio equipment attached to the motorcycle frame.

John and Melinda Lazzeroni ("Applicants") filed the application that led to the '525 patent on December 8, 1988. Helmet accessories for mounting a microphone and electrical plug on a motorcycle helmet were known as of this filing date, but Applicants claimed accessories that allegedly were superior to the prior art. As stated in the written description, some prior art accessories were mounted via holes drilled into the helmet, causing undesirable damage to the motorcycle helmet. '525 patent, col. 1, l. 63—col. 2, l. 5. A second type of prior art accessory was mounted to the helmet with clamps and, therefore, avoided the problem of damaging the helmet. Such accessories had a separate problem, however, in that the clamped accessories extended down below the bottom edge of the motorcycle helmet, creating a bulky object that would annoyingly strike a motorcyclist's shoulder when the head was turned. This problem was exacerbated in other accessories in which the microphone mount was attached to the electrical plug mount, creating an even larger object extending below the lower edge of the helmet. *Id.* at col. 2, ll. 5–11.

Applicants claimed accessories that avoided these problems. Their accessories attached to the lower edge of the motorcycle helmet by clamps, with the microphone mount and the electrical plug mount separately clamped to the helmet so that they were positioned above the lower edge of the motorcycle helmet. Applicants' accessories, therefore, did not damage the mo-

torcycle helmet and did not protrude below the rim of the motorcycle helmet.

Claims 1–3 of United States Patent Number 4,788,724 ("the '724 patent"), which were also allowed in the reissued '525 patent, read, in pertinent part, as follows:

1. Helmet accessories for helmets of the type having an opening for viewing and receiving the head of a wearer, the helmet opening having a lower side edge with adjacent inside and outside helmet surfaces above the lower side edge, said helmet accessories placing a microphone attached at the end of a boom proximate the helmet wearer's mouth; and

a microphone mount for attachment to an associated helmet, said microphone mount adapted to receive and secure an associated microphone boom for placing the microphone proximate the wearer's mouth; and

a plug mount for attachment to the associated helmet proximate said microphone mount, said plug mount adapted to receive and secure an associated electrical plug and provide for electrical connection from the electrical plug to the microphone secured by the microphone mount, to the associated earphones located in the helmet, and to associated audio instruments located distal to the helmet;

*both said microphone mount and said plug mount each including an attached clamp portion engaging the lower side edge of the associated helmet,* said clamp portion comprising an outside elongated jaw and an inside elongated jaw .... whereby said microphone mount and plug mount secure the microphone in position and provide for electrical connections in order that the wearer may utilize the associated microphone, earphones, and audio instruments.

2. The helmet accessories as defined in claim 1 wherein said microphone mount includes a microphone boom seat attached to said outside jaw, said seat adapted to receive and secure the boom of a microphone, and to provide means for wires associated with the microphone to exit said seat.

3. The helmet accessories as defined in claim 2 wherein said microphone boom seat is attached to said outside jaw proximate said second end, said microphone boom seat thereby located proximate the outside surface of the helmet above the helmet edge.

(Emphasis added). Claims 4–7, also at issue in this case, depend from claims 1 and 3, and add additional limitations that are not relevant to this appeal.

Applicants later determined that their patent failed to claim the full subject matter to which they were entitled, and sought a reissue patent to more broadly claim their invention. In their Reissue Declaration, Applicants argued that their invention "properly includes within its scope an embodiment wherein the microphone boom and the electrical plug are both attached to a single element...." Accordingly, Applicants asserted new claims 15–20 in the reissue proceedings that encompassed an accessory where the microphone mount and plug mount were clamped to the helmet by a single pair of jaws. The examiner rejected these claims under 35 U.S.C. § 112 ¶ 1, 35 U.S.C. § 112 ¶ 2, and 35 U.S.C. § 251. The examiner explained that the specification "fail[ed] to support the subject matter of claims 15 through 20 directed to a microphone boom and an electrical plug mounted on the same jaw pair." The examiner further commented that these new claims improperly "introduced new matter into the application" since "[t]he concept of both such mounts occurring on a single pair of jaws is not present in the original patent."

In response, Applicants cancelled the rejected claims and proposed new claims drafted in a means-plus-function format. These claims broadly recited "gripping means" for attaching the microphone mount and electrical plug mount to the motorcycle helmet. After further amendment, claims in this format were eventually allowed as claims 15–17 of the reissue patent.[1] Applicants' patent was reissued as the '525 patent on February 1, 1994 with new claims 15–17 and with claims 1–14 essentially the same as in the '724 patent.

Harley–Davidson began buying J & M's helmet accessories in late 1987 or early 1988. These accessories were a commercial embodiment of the '724 patent and had separate microphone boom mounts and electrical plug mounts that attached to the helmet via separate clamps. Harley–Davidson continued to buy accessories from J & M until 1991. In the summer of 1989, however, Harley–Davidson approached Radio Sound about manufacturing accessories for resale by Harley–Davidson.

Harley–Davidson and Radio Sound produced their first accessories in 1990. When mounted, these accessories extended below the lower edge of the motorcycle helmet. In 1997, Radio Sound and Harley–Davidson began to manufacture and sell two new versions of their helmet accessories, model numbers 77147–98 and 77147–91C. These accessories have an integrated mount for the microphone boom and the electrical plug, attach to the helmet with a single clamp, and do not extend below the lower edge of the motorcycle

helmet. J & M claims that these accessories infringe its '525 patent.

J & M brought suit against Harley–Davidson in November 1997, alleging infringement of claims 3–7 and 15–17 of the '525 patent.[2] Harley–Davidson responded that its microphone is non-infringing and that J & M's patent is invalid on numerous grounds. J & M then moved to preliminarily enjoin Harley–Davidson from selling its allegedly infringing accessories.

The district court denied J & M's motion, finding that J & M had failed to establish a substantial likelihood of success on the merits for its allegations of infringement. *J & M Corp. v. Harley–Davidson, Inc.*, No. CIV 97–2353–PHX–RCB (D.Ariz. May 14, 1998) ("*J & M I*"). In reaching this conclusion, the court construed the claims in dispute and determined that all of the claims require accessories having a separate mount for the microphone and for the electrical plug, each mount having its own clamp. Because the accused devices have an integrated mount, attached by a single clamp, the court found that they could not literally infringe. *J & M I* at 8–15. The court then considered infringement by equivalents and concluded that J & M had not carried its burden of demonstrating infringement. *Id.* at 15–19.

J & M appealed the district court's denial of its motion and we summarily affirmed, with no written opinion. *J & M Corp. v. Harley–Davidson, Inc.*, 185 F.3d 885 (Fed.Cir.1999) (unpublished table decision).

The case returned to the district court, and J & M moved for partial summary judgment on Harley–Davidson's several af-

---

**1.** In the claims finally allowed, the means-plus-function limitation for claims 15 and 16 reads: "gripping means for engaging the inner and outer surfaces of said helmet above the bottom edge, the gripping means including a fulcrum located below the bottom

edge." Claim 17, which is a method claim, contains a nearly identical means-plus-function limitation.

**2.** Radio Sound was later added as a defendant.

firmative defenses. Harley–Davidson responded with its own motion for summary judgment of non-infringement. In addressing these motions, the court focused on J & M's arguments for infringement by equivalents, having disposed of J & M's other infringement arguments with its claim construction rulings. These arguments for infringement by equivalents included assertions of infringement under the doctrine of equivalents with respect to all claims. These arguments further included assertions of literal infringement of claims 15–17, contending that the means-plus-function limitations in those claims are statutorily entitled to a literal scope that includes "the corresponding structure ... described in the [written description] and equivalents thereof." 35 U.S.C. § 112 ¶ 6. The court had previously concluded that the "gripping means" limitation of claims 15–17 corresponds to the disclosed separate clamps for the microphone mount and the plug mount. *See J & M I* at 13–14. J & M argued, however, that an integrated mount attached by a clamp is an equivalent of the separate clamps disclosed in the specification and that the "gripping means" limitation of claims 15–17 should be construed under 35 U.S.C. § 112 ¶ 6 to read literally on the integrated mount of the defendants' accessories. Because it considered the analysis of infringement by § 112 ¶ 6 equivalents of claims 15–17 and infringement under the doctrine of equivalents of claims 3–7 to be substantially the same, the court considered these issues together.

In doing so, the court first rejected the defendants' counter-arguments that the prosecution history limited the scope of equivalents, either as a matter of claim construction, or by prosecution history estoppel. The court next determined that the evidence for infringement by equivalents introduced by J & M, including all three of its expert reports, was either inadmissible or defective.

The court then applied the function-way-result test for equivalency. The court reasoned that the function of the two clamps in all of the claims at issue was to attach the accessories to the helmet without damaging the helmet and in a way that reduced the bulkiness of the accessory. *Id.* at 52. Separately clamping the microphone and plug mounts reduced the bulkiness of the mounts. The court concluded that the single clamp design did not reduce the bulkiness of the accessory in the same way to produce the same result, and that no reasonable juror could hold otherwise. *Id.* at 53–54.

As a result, the court granted summary judgment of non-infringement. J & M now appeals from this grant of summary judgment, arguing that the court abused its discretion in excluding J & M's expert reports and that the court erred in holding that the accused accessories do not infringe by equivalents. Harley–Davidson cross-appeals the court's holding that J & M is not barred from asserting infringement under the doctrine of equivalents by prosecution history estoppel.

## DISCUSSION

### I. Standard of Review

■■■ We review a district court's grant of summary judgment *de novo*. *Ethicon Endo–Surgery, Inc. v. United States Surgical Corp.*, 149 F.3d 1309, 1315, 47 USPQ2d 1272, 1275 (Fed.Cir.1998). In doing so, we make an independent evaluation of whether the standards of summary judgment have been met. *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir.1994). The evidence must be reviewed in a light most favorable to the non-movant, and all reasonable inferences must be drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Where a

party "fails to make a showing sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must be entered against that party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

 An infringement analysis requires two steps: construction of the claims, to determine their scope and meaning, and comparison of the properly construed claims to the allegedly infringing device or method. *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1454, 46 USPQ2d 1169, 1172 (Fed.Cir.1998) (*en banc*). Claim construction, including the meaning and scope of any means-plus-function limitations, is a matter of law subject to *de novo* review. *Lockheed Martin Corp. v. Space Sys./Loral, Inc.,* 249 F.3d 1314, 1323, 58 USPQ2d 1671, 1677 (Fed.Cir.2001). The comparison of claims to the accused device or method, and the corresponding determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact. *Tanabe Seiyaku Co. v. United States Int'l Trade Comm'n,* 109 F.3d 726, 731, 41 USPQ2d 1976, 1981 (Fed.Cir.1997).

 Occasionally, however, "the issue of literal infringement may be resolved with the step of claim construction, for upon correct claim construction, it may be apparent whether the accused device is within the claims." *Multiform Desiccants, Inc. v. Medzam,* 133 F.3d 1473, 1476, 45 USPQ2d 1429, 1431 (Fed.Cir.1998). Similarly, the determination of infringement under the doctrine of equivalents may be limited as a matter of law. For example, the scope of equivalents may be limited by the prosecution history, if the applicant narrowed claims to overcome prior art. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 234 F.3d 558, 585, 56 USPQ2d 1865, 1886 (Fed.Cir.2000) (*en*

*banc*). The scope of equivalents may also be limited by statements in the specification that disclaim coverage of certain subject matter. *Dawn Equip. Co. v. Kentucky Farms, Inc.,* 140 F.3d 1009, 1016, 46 USPQ2d 1109, 1114 (Fed.Cir.1998). Such limitations on the scope of equivalents are legal determinations, which we review *de novo.*

## II. *Infringement By Equivalents*

J & M asserts that the court erred in granting summary judgment because there is at least a material issue of fact as to whether the accused single-mount devices infringe by equivalents the claims at issue. Harley–Davidson's integrated mount design, J & M contends, is a classic "one-for-two" equivalents scenario, merely substituting a single mount and clamp for the dual mount and clamp structure literally required by the claims of the '525 patent. There is no significant difference, J & M argues, between these two designs. According to J & M, the district court incorrectly determined that having two separate mounts served the function of reducing bulkiness.

Harley–Davidson responds that J & M has failed to explain how dual clamps are equivalent to the single clamp employed by the accused devices. In contrast, Harley–Davidson claims that it has conclusively demonstrated that the two-clamp design claimed in the '525 patent is distinct from the one-clamp design of the accused devices. Harley–Davidson further argues that J & M is precluded, as a matter of law, from arguing a scope of equivalents that encompasses its single-clamp accessories. Harley–Davidson argues that the prosecution history establishes that the specification does not support claim coverage of a single clamp embodiment. Therefore, Harley–Davidson argues, a single clamp embodiment cannot be an equiva-

lent. Moreover, because these claims were narrowed during prosecution to more particularly claim the dual clamp limitation, it argues that prosecution history estoppel bars J & M from asserting that a single clamp design infringes by equivalents.

We agree with Harley–Davidson that, as a matter of law, the claims at issue cannot encompass the accused single-clamp accessories.

### A. Claims 15–17

■ We first consider J & M's allegations of infringement by equivalents with respect to claims 15–17, since these claims, which employ means-plus-function language, raise issues that are distinct from those concerning claims 3–7. The means-plus-function limitation in claims 15–17—"gripping means"[3]—corresponds in the specification to a structure with two clamps, one for the microphone mount and one for the electrical plug mount. The specification does not disclose any alternative gripping structure, and in view of this specification disclosure and disclaimer of the single mount accessory in the prior art, and in view of the prosecution history, we agree with the district court that these claims are limited to a dual clamp structure. J & M argues, however, that the single clamp of the accused accessories is equivalent to the dual clamp structure required by this means-plus-function limitation, either for the purposes of 35 U.S.C. § 112 ¶ 6 or, alternatively, under the doctrine of equivalents. We conclude that J & M is not entitled to such a broad scope of equivalents.

*1. Literal Infringement: Equivalency Under § 112 ¶ 6*

■ We first reject J & M's argument that the gripping means limitation of claims 15–17 literally covers the single clamp structure of the accused devices. The literal scope of a properly construed means-plus-function limitation does not extend to all means for performing a certain function. Rather, the scope of such claim language is sharply limited to the structure disclosed in the specification and its equivalents. Moreover, the extent of equivalents must be interpreted in light of the disclosure of the invention in the specification, as a whole, as well as the prosecution history. *Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850, 863, 20 USPQ2d 1252, 1262 (Fed.Cir.1991); *Medtronic Inc. v. Intermedics, Inc.*, 799 F.2d 734, 742, 230 USPQ 641, 645 (Fed.Cir. 1986); *Alpex Computer Corp. v. Nintendo Co.*, 102 F.3d 1214, 1220, 40 USPQ2d 1667, 1673 (Fed.Cir.1996) (holding that the prosecution history is relevant to determining the meaning of means-plus-function limitations); *Signtech USA v. Vutek, Inc.*, 174 F.3d 1352, 1357, 50 USPQ2d 1372, 1375 (Fed.Cir.1999) (holding that a means-plus-function limitation did not cover structure disclaimed in the specification). Both the prosecution history and the specification of the '525 patent limit the scope of § 112 ¶ 6 equivalents for the "gripping means" limitation of claims 15–17, precluding coverage of a single clamp accessory.

The prosecution history conclusively establishes that the single clamp structure of the accused devices cannot be an equivalent of the dual clamp embodiment disclosed in the '525 patent specification. As

---

**3.** The district court construed this limitation to be a means-plus-function limitation under 35 U.S.C. § 112 ¶ 6 and neither party has challenged this determination on appeal. We need not consider, under our *de novo* review, whether this construction is correct because construing the limitation as structural rather than as a means-plus function limitation would not change the result in this case.

noted above, in advancing new claims 15–17 in the reissue proceedings, J & M explicitly sought coverage of a single clamp embodiment of its invention. The examiner rejected these broadly drafted claims, determining that they were not "drawn to the invention disclosed in the original patent" because "[t]he concept of both such mounts occurring on a single pair of jaws is not present in the original patent." Faced with this rejection, J & M acquiesced, canceling the claims, and substituting new claims drafted in the means-plus-function format.

The examiner's rejection, coupled with J & M's acquiescence and substitution of narrower claims, establishes that a single-clamp embodiment is not supported by the written description. Therefore, the scope of the claims cannot include a single-clamp embodiment. *Multiform Desiccants*, 133 F.3d at 1479, 45 USPQ2d at 1434; *In re Dossel*, 115 F.3d 942, 946, 42 USPQ2d 1881, 1884–85 (Fed.Cir.1997). J & M is statutorily entitled only to claims that encompass embodiments of the "gripping means" disclosed in the specification and their equivalents.

The specification of the '525 patent further establishes that the single clamp structure cannot be an equivalent of the dual clamp. In the section entitled "Description of the Related Art," a single clamp structure is described as a flaw of prior art accessories. Specifically, the specification states:

> This is especially a problem when the electrical wires … attach by means of a plug mounted to the microphone mount such as to enlarge the portion of the mount residing below the helmet lip and present a still larger object for striking the helmet wearer's shoulder when his head turns.

'525 patent at col. 2, ll. 14–20. J & M cannot now extend the scope of its claims to include this disclaimed structure. *See*

*Sofamor Danek Group, Inc. v. DePuy–Motech, Inc.*, 74 F.3d 1216, 1220, 37 USPQ2d 1529, 1531 (Fed.Cir.1996).

Therefore, the literal scope of the "gripping means" limitation of claims 15–17 does not include the single clamp structure of the accused accessories.

### 2. *Equivalency Under The Doctrine of Equivalents*

██ In view of the prosecution history, we also conclude that the gripping means limitation of claims 15–17 cannot include a range of equivalents under the doctrine of equivalents that extends to single clamp accessories. J & M submitted the means-plus-function claims 15–17 in response to the examiner's rejection of claims broadly covering both single clamp and dual clamp accessories. The allowed claims 15–17, which we have determined are limited to dual clamp accessories, are narrower with respect to this limitation. Therefore, prosecution history estoppel bars J & M from asserting coverage of the accused single clamp accessories under the doctrine of equivalents. *See Mycogen Plant Science, Inc. v. Monsanto Co.*, 261 F.3d 1345, 1350, 59 USPQ2d 1852, 1855–56 (Fed.Cir.2001) (holding that the rule set forth in *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 234 F.3d 558, 56 USPQ2d 1865 (Fed.Cir.2000) applies when a rejected claim is canceled and replaced by a narrowing claim).

### B. *Claims 3–7*

J & M asserts infringement under the doctrine of equivalents with respect to claims 3–7. Again, we conclude that J & M is not entitled to such a broad scope of equivalents.

██ Structure expressly disclaimed in the specification, of course, cannot be considered an equivalent under the doctrine of equivalents. *Dawn Equip.*, 140

F.3d at 1016, 46 USPQ2d at 1114; *Spectra Corp. v. Lutz*, 839 F.2d 1579, 1582, 5 USPQ 2d 1867, 1869 (Fed.Cir.1988). As noted above, the specification disclaims coverage of a single clamp structure as a flaw of prior art accessories. Moreover, while Applicants were aware of the possibility of placing the microphone boom and electrical plug mount on a single clamp, they dismissed such an approach and expressly described and claimed accessories in which the boom and plug were separately mounted. J & M cannot now overlook this deliberate decision and reclaim this disclaimed subject matter through the doctrine of equivalents.

Because we have determined that J & M is not entitled to the asserted range of equivalents with respect to claims 3–7, we need not consider Harley–Davidson's additional arguments with respect to prosecution history estoppel.

### III. *The Exclusion of J & M's Expert Reports*

J & M argues that the court abused its discretion in rejecting all three of its expert reports on the issue of infringement by equivalents. Because we have concluded that, as a matter of law, J & M's arguments for infringement by equivalents must fail, we need not consider this issue.

### CONCLUSION

J & M is not entitled to a scope of equivalents with respect to claims 3–7 or claims 15–17 that encompasses Harley Davidson's single-clamp accessories. The summary judgment of the district court is affirmed.

*AFFIRMED.*