NOTE:  This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

---

**SUNBEAM PRODUCTS, INC.,**
(DOING BUSINESS AS **JARDEN CONSUMER SOLUTIONS**),
*Plaintiff-Appellant,*

**v.**

**HOMEDICS, INC.,**
*Defendant-Appellee.*

---

2010-1197

---

Appeal from the United States District Court for the Western District of  Wisconsin in case No. 08-CV-0376, Magistrate Judge Stephen L. Crocker.

---

Decided:  December 15, 2010

---

THOMAS G. PASTERNAK Steptoe & Johnson, LLP, of Chicago, Illinois, argued for plaintiff-appellant.  With him on the brief were RICHARD K. WILLARD and TIFFANY A. MILLER, of Washington, DC.

JOHN M. HALAN, Brooks Kushman P.C., of Southfield, Michigan, argued for defendant-appellee. Of counsel were MARK A. CANTOR and THOMAS W. CUNNINGHAM.

———————————

Before BRYSON, PLAGER, and CLEVENGER, *Circuit Judges.*

BRYSON, *Circuit Judge.*

This case concerns a patent on the force-transmitting bearings for a platform scale that Sunbeam Products, Inc., asserted against its competitor HoMedics, Inc. Sunbeam moved for summary judgment of infringement; HoMedics moved for summary judgment on its invalidity counterclaim. The trial court granted summary judgment of noninfringement in favor of defendant HoMedics, although HoMedics never specifically moved for that order. Because the ground on which the court granted summary judgment was well developed in this case, we hold that Sunbeam was not unfairly surprised or prejudiced by the termination of this case in favor of HoMedics. And because the patent in suit clearly excluded the structure found in the accused devices from the scope of its claims, we affirm.

I

The patent in suit, U.S. Patent No. 5,133,420 ("the '420 patent"), is entitled "Bearing Support for a Scale Platform." The patent has nine claims. The two independent claims, claim 1 and claim 8, are at issue in this appeal. Claim 1 recites a platform scale including bearings that are

mounted on the underside of said platform to support said platform with respect to said base with said bearing members engaging said levers inter-

mediate their ends to apply a rotating force to said levers in response to a load on said platform, said bearing members being loosely coupled to said platform permitting horizontal displacement, said bearing members each having stand portions and depending column portions each, said depending column portions having a lower end, assembly means on said stand portions and on said platform retaining said stand portions in face-to-face engagement with the underside of said platform and permitting limited displacement of said bearing members in a horizontal direction . . . .

'420 patent, col. 5, ll. 4-18. Claim 8 is similar, although it claims a bearing that is in "sliding engagement" rather than in "face-to-face engagement" with the underside of the platform. *Id.*, col. 6, ll. 23-32. The district court treated the two claims identically.

The bearings transmit the force applied against the upper platform of the scale to the force-sensing levers on the scale's base. The bearings, located at each corner of the scale, are designed to ensure that a vertical force is applied against the force-collection levers even if weight is unevenly distributed on the platform, or if a non-vertical force is applied against the platform, or if the upper and lower platforms of the scale are out of alignment. Figure 3 of the '420 patent illustrates a bearing attached to one corner of the scale and engaging with a force-collecting lever. Figure 10 illustrates a single, unattached bearing. In an assembled scale, the bearing depicted in figure 10 is attached to the underside of the platform.



Fig. 3     Fig. 10

The bearing described in the '420 patent has a base portion consisting of coplanar flanges 42b, 42c, and 42d. Two of the flanges, 42b and 42c, contain a slot 42e. During assembly, a corresponding tab on the underside of the platform is inserted into each of the slots and is bent against the underside of the platform, thus connecting the bearing to the scale. Because the slot is larger than the tab, the connection is loose and the bearing is free to move horizontally, to a limited degree, with respect to the platform. '420 patent, col. 3, ll. 50-56. The columnar section 42f of the bearing is perpendicular to the flanges. It includes a slot 42g into which fits the force-sensing lever 18c. The lever in turn transfers the force from the bearing to the weight-sensing mechanics of the scale. *Id.*, col. 3, ll. 63-68; col. 4, ll. 1-3. Allowing for horizontal movement between the bearing and the underside of the platform ensures that the slot 42g will align with the force-sensing lever at lever notch 44 while remaining vertical vis-à-vis the platform. The bearing must remain vertical, according to the '420 specification, so as to cause "rotational movement of the force collecting levers" but prohibit the application of any "twisting or lengthwise moment of force on the force levers or additional friction," which would produce inaccuracies and inconsistent weight measurement." *Id.*, col. 4, ll. 6-11.

The '420 patent includes a detailed discussion of the prior art bearings, including those disclosed in U.S. Patent No. 4,452,326 ("the '326 patent"). The specification of the '420 patent characterizes the '326 patent as teaching "the concept of having a one-piece bearing member which is loosely connected to the platform so that it may pivot or rock to adjust itself to the proper engagement with the bearing portion on the force collection lever." '420 patent, col. 1, ll. 42-46. The scale disclosed in the '326 patent has a dimpled indentation on the underside of the base at each of its four corners. Each bearing has a rounded nose that fits into the dimple. '326 patent, col. 1, ll. 44-53. That construction allows the bearing to rock and pivot in the dimple. The resulting tilting motion of the bearing ensures that the columnar portion of the bearing properly engages the force-collection lever even if an uneven or skew force is applied against the platform or if the upper and lower portions of the scale are not in precise alignment.

The '420 patent specification criticizes the prior art pivoting bearing on the ground that it "prevents the application of pure vertical force to the force collecting lever and increases the possibility that an undesired binding or force moment will be applied to the force collection lever." '420 patent col. 1, ll. 46-51. The bearing design claimed in the '420 patent, by contrast, is intended to ensure that the forces transmitted by the bearing "are applied vertically with no binding or twisting between the force collection levers and their mounting means" and that, as a result, the bearing will "apply only vertical forces to the [force collection] levers." *Id.*, col. 2, ll. 9-12, 16-17.

HoMedics's accused scales all include bearings similar to the bearing disclosed in the '326 patent. Each of the

HoMedics bearings is machined with a nose-like protrusion that fits into a corresponding dimple on the underside of the platform. The trial court noted that the accused bearings all rock and pivot within their corresponding dimples in the underside of the platform. Sunbeam does not dispute that the HoMedics bearings rock and pivot in that manner. Sunbeam's position is that in addition to rocking and pivoting, the HoMedics bearings are capable of some horizontal movement and therefore infringe the '420 patent.

The parties focus their dispute on the limitation in claim 1 (and the corresponding limitation in claim 8) that describes the relationship between the underside of the platform and the bearing: "retaining said stand portions in face-to-face engagement with the underside of said platform and permitting limited displacement of said bearing members in a horizontal direction." *Id.*, col. 6, ll. 14-16. In a claim construction order issued on April 29, 2009, the district court ruled that in both claims 1 and 8, "the bearing member and the platform are parallel to each other, they are not on a 'pivot.'" The claimed assembly means, according to the court, "allows the bearing member and the platform to stay in face-to-face (claim 1), sliding engagement (claim 8) with limited horizontal movement." That structure, the court explained, "insures the desired 'pure downward force.'" By contrast, the court noted, in the prior art design the bearing member "pivots about a point on the platform [thus] prevent[ing] the application of a pure vertical force."

During the claim construction proceedings, HoMedics argued that the "horizontal direction" limitation prohibits any vertical movement at all between the underside of the platform and the face of the bearing. The district court rejected that argument and held that in the claimed

structure, there must be "sufficient clearance so that the bearings may move horizontally with respect to the platform" and that "for the claimed horizontal movement to occur, there has to be *some* vertical movement, however minuscule; the scale would not work at all if it completely disclaimed vertical movement."

Subsequently, on October 14, 2009, the court entered an order granting summary judgment for HoMedics. Again focusing on the disputed "face-to-face" and "sliding engagement" limitations, the court noted that the '420 patent criticized the prior art bearing that rocks and pivots on the ground that "a bearing member that can pivot or rock is undesirable because it could lead to binding or torque on the force collection lever, which would decrease the accuracy of the scale." The '420 patent bearing, according to the court, purports to improve on the prior art "by exerting 'a pure downward force between the scale platform and the force-collection lever.'" The court therefore ruled that the claims required the base of the bearing to be "oriented parallel to the platform and remain parallel to the platform at all times." The court stated that in so ruling it was not altering or amending its April 2009 claim construction order, in which the court had stated that the claims allowed vertical movement to the extent required to facilitate the desired horizontal movement. Instead, the court explained that its "rejection of a vertical movement limitation did not—indeed, could not—endorse any sort of pivotal movement by the bearing member since this would defeat the critical improvement claimed by the '420 patent." *Sunbeam Prods. v. HoMedics, Inc.*, 670 F. Supp. 2d 873, 878 n.2 (W.D. Wis. 2009).

In light of its claim construction and the undisputed evidence regarding the operation of the bearings in the accused HoMedics products, the district court granted

summary judgment of noninfringement. The court determined that no reasonable juror could find that bearings that rock and pivot remain parallel to the underside of the platform; accordingly, it held that the pivoting bearings in all of the accused products do not literally infringe the '420 patent. As to infringement under the doctrine of equivalents, the court held that to treat a bearing that rocks and pivots about a point on the underside of the platform as falling within the reach of the '420 patent claims would vitiate the "face-to-face" and "sliding" engagement limitations of claims 1 and 8.

Sunbeam moved to alter or amend the summary judgment order, arguing that the court's claim construction in that order was inconsistent with its prior claim construction and that the court's *sua sponte* grant of summary judgment had denied Sunbeam an opportunity to argue that the accused scales infringed under the new claim construction. The district court denied the motion, and Sunbeam appealed to this court.

## II

### A

This court has recognized that a specification may reveal an intentional disclaimer, or disavowal, of claim scope by the inventor. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc); *SciMed Life Sys. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341 (Fed. Cir. 2001) ("[w]here the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in

question."). We agree with the district court that the '420 patent disclaims coverage of bearings that employ the rocking and pivoting mechanism disclosed in the '326 patent. The Background of the Invention section of the '420 patent specification highlights the problem inherent in bearings that rock and pivot: They "prevent the application of a pure vertical force to the force collecting lever and increase[] the possibility that an undesired binding or force moment will be applied to the force collection lever." '420 patent, col. 1, ll. 48-51. The Summary of the Invention section of the specification states that Sunbeam improved upon the prior art by inventing a bearing that "exerts a pure downward force between the scale platform and the force collection lever." *Id.*, col. 1, ll. 55-57. The Summary of the Invention goes on to explain the objective of the claimed invention: a bearing that can apply purely vertical forces against the force-collection levers. *Id.*, col. 2, ll. 6-17. The specification adds that "the force applied through the bearing members 42 must be vertical, causing rotational movement of the force collecting levers but may not include a twisting or lengthwise moment of force or additional friction would be introduced to produce inaccuracies and inconsistent weight measurements." *Id.*, col. 4, ll. 5-11.

The description of the horizontal movement of the bearing along the underside of the platform, and thus the transmission of "strictly vertical" force, is not limited to a preferred embodiment of the '420 patent, but is the principal feature of the invention as a whole. That movement allows for the transmission of a "pure vertical application of forces to the levers," '420 patent, col. 4, l. 53, something that bearings that rock and pivot cannot do. Thus, we hold that the district court was correct in concluding that the claim limitations requiring that the bearings be coupled in "face-to-face engagement" or "sliding engage-

ment" with the underside of the platform do not encompass bearings that rock and pivot.

B

Sunbeam and HoMedics agree that the accused bearings rock and pivot in a dimple on the underside of the platform. The accused bearings thus implement exactly what the prior art '326 patent disclosed and Sunbeam's '420 patent disavowed. Nonetheless, Sunbeam argues that there are open questions of fact as to whether the accused bearings move horizontally, both within the dimple and across the underside of the platform and that for that reason the district court should not have granted summary judgment of noninfringement.

Sunbeam predicates its argument in large part on the differences among the "assembly states" of the accused scales, which it identifies as (1) unassembled, (2) during assembly, (3) assembled and unloaded, and (4) as assembled and loaded. However, the '420 patent claims a utility scale, not an unassembled scale or a method of assembling a scale, so the relevant state for purposes of infringement is the fully assembled scale. The evidence in the summary judgment proceedings showed that all accused devices include a dimple on the underside of the platform at each corner of the platform and a bearing with a nose-like protrusion that pivots and rocks within the dimple. Sunbeam fails to show how that structure satisfies the horizontal movement that is required by the "face-to-face engagement" and "sliding engagement" limitations. To the extent that Sunbeam relies on scrape marks on the undersides of the platforms in samples of the accused devices as an indication that the bearings move horizontally, that evidence does not show that the bearings move horizontally to more than a de minimis

extent in the assembled scales, and it is thus not suffi-cient to avoid summary judgment.

C

Sunbeam also argues that the accused bearings in-fringe under the doctrine of equivalents. Relying on principles of claim vitiation, the court concluded that to allow bearings that rock and pivot to infringe would render the "face-to-face engagement" limitation of claim 1 and "sliding engagement" limitation of claim 8 meaning-less. While there may be merit to that analysis, there is an even simpler explanation for why the accused devices do not infringe under the doctrine of equivalents: The specification of the '420 patent explains what is not the claimed invention, and because that explanation excludes the accused bearings from falling within the reach of the patent, those devices cannot infringe under the doctrine of equivalents. *See SciMed Life Sys.*, 242 F.3d at 1347 ("The unavailability of the doctrine of equivalents could be explained either as the product of an impermissible vitiation of the 'non-metallic' claim limitation, or as the product of a clear and binding statement to the public that metallic structures are excluded from the protection of the patent"); *J & M Corp. v. Harley-Davidson, Inc.*, 269 F.3d 1360, 1366 (Fed. Cir. 2001) ("The scope of equiva-lents may also be limited by statements in the specifica-tion that disclaim coverage of certain subject matter").

The doctrine of equivalents is not a license to rewrite the claims to encompass what a patentee believes to be an equivalent structure. That is especially true in a case such as this one, where the accused product is not later-developed technology that is insubstantially different from the claimed invention, but instead embodies dis-avowed prior art. Thus, the district court correctly held

that the accused bearings do not infringe the '420 patent under the doctrine of equivalents.

## III

Finally, Sunbeam argues that the district court committed procedural error by granting summary judgment *sua sponte*. Under Seventh Circuit law, which governs this procedural issue, a district court may enter summary judgment *sua sponte* if the losing party has "(1) proper notice that the district court was considering entering summary judgment and (2) a fair opportunity to present evidence in opposition to the court's entry of summary judgment." *Simpson v. Merch. Recovery Bureau*, 171 F.3d 546, 549 (7th Cir. 1999).

Sunbeam had notice that the court was considering adjudicating the dispute without a trial, as Sunbeam itself sought summary judgment of infringement. Sunbeam argues, however, that it regarded the court's April claim construction order as not precluding infringement "by bearings that could rock and pivot as well as move horizontally." Sunbeam asserts that it was surprised by the court's reliance on the pivoting action of the accused bearings, and it contends that in the October summary judgment ruling the court adopted a different claim construction from the one it had issued in the April order.

We disagree with Sunbeam's contention that the district court adopted a new claim construction in its summary judgment ruling. In its April claim construction order, the court observed that the "face-to-face engagement" and "sliding engagement" limitations did not preclude all vertical movement of the bearing vis-à-vis the platform, because some minimal vertical movement would be necessary to facilitate the horizontal movement of the

bearing needed to maintain the bearing in face-to-face or sliding engagement with the platform, i.e., horizontal to the platform. The court did not suggest that rocking and pivoting of the bearing was consistent with maintaining the claimed face-to-face and sliding engagement of the bearing and platform. Indeed, it clearly stated that "[i]n both claims 1 and 8, the bearing member and the platform are parallel to each other, they are not on a 'pivot.'" As the district court stated in its order denying Sunbeam's motion for reconsideration, it had "explained repeatedly [that] the bearing can have vertical movement normal to the platform without leaving a parallel plane; however, it cannot rock and pivot."

Sunbeam has acknowledged throughout the litigation that the accused bearings rock and pivot, and Sunbeam was aware that the rocking of the accused bearings was the principal focus of HoMedics's argument against infringement. The parties both offered the court a comprehensive factual and legal presentation on that issue in the context of the claim construction proceeding and Sunbeam's motion for summary judgment of infringement. Nothing in the record suggests that Sunbeam lacked notice of the central role of that issue for purposes of infringement or of the possibility of a pretrial resolution of the case. Because Sunbeam was not denied notice of the potentially dispositive legal issue or the opportunity to introduce any available evidence as to that issue, the district court did not commit legal error by granting summary judgment of noninfringement *sua sponte*.

**AFFIRMED**